UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TONYA CAMPBELL and JOHN PADEN,
on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.                                        CIVIL ACTION NO.  3:22cv34

INTERCONTINENTAL CAPITAL GROUP, INC.,

Defendant.

## JOINT MEMORANDUM IN SUPPORT OF
## MOTION TO APPROVE SETTLEMENT

Tonya Campbell ("Campbell) and John Paden ("Paden") (collectively, the "Named Plaintiffs"), on behalf of themselves and all others similarly situated, ("Plaintiffs") and Intercontinental Capital Group ("ICG" or "Defendant"), by their respective counsel, respectfully submit this memorandum in support of their Motion for Settlement Approval. On April 19, 2022, the parties mediated this matter and a substantially similar companion case (filed in the Eastern District of New York)[1] in White Plains, New York before mediator Ruth Raisfeld.

The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it is a fair and reasonable resolution of a bona fide dispute and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.

For the reasons set forth below, the parties respectfully request that the Court enter an order

---

[1] *Lucas v. ICG, Inc.* USDC E.D.N.Y. Case No. 1:22-cv-591 (the "Lucas Litigation").  Counsel in the Lucas litigation is the same as in this matter.

approving the $1,050,000 settlement detailed in the Settlement Agreement ("Settlement Agreement").

The parties have structured the Agreement and settlement process as an opt-in FLSA collective

settlement as they believe that to be the most efficient vehicle for an efficient resolution of this matter

while ensuring that individuals who wish the join the settlement can do so.[2]   For the Court's

convenience the Settlement Agreement is attached as Exhibit A.

At the April 19th mediation, the parties made a great deal of progress and agreed to the basic

framework and terms which are now submitted for approval.  While the mediation was fruitful, there

remained a number of matters concerning settlement structure and ICG's finances that required

continued discussion and verification before a final agreement could be executed, hence the passage

of time between April 19th and now.

Fortunately, the parties were able to compromise as needed and finalize a written agreement

that has been executed by all named parties (the "Settlement Agreement") and that is now presented

for the Court's review.  The parties' jointly move for its approval and submit the following factual and

legal authorities in support thereof.[3]

**PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS**

    I.        Factual Allegations

On January 21, 2022, the Named Plaintiffs filed the original collective/class action complaint

in this action in the Richmond Division of the United States District Court, Eastern District of

Virginia alleging claims of unpaid overtime and regular wage compensation pursuant to the Fair Labor

Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") and state law. *See* [Doc. 1].  On February 1, 2022,

the Lucas Litigation was initiated, alleging similar and overlapping claims.

---

[2] At the time of settlement Plaintiffs' had not moved for certification of any claims under Federal Rule 23.
[3] The executed settlement agreement is attached as Exhibit 1.

ICG is in the business of selling home refinance loans and original mortgages. It employs a number of individuals who provide assistance in the loan process and who receive incentive compensation. At its apex, ICG employed several thousand employees in approximately twenty-five states who worked from a combination of brick-and-mortar locations and home offices. The gravamen of both complaints was that ICG failed to include commissions and bonus compensation in the calculation of regular rates for its hourly employees. The complaints aver that the alleged omission resulted in unpaid overtime to affected employees in the weeks where they worked over forty (40) hours and had bonus/commission income.

Shortly after initiation of the instant matter, counsel for the Defendant reached out to Plaintiffs' counsel to discuss the possibility of an early mediation. Plaintiffs were receptive to the idea but additional discussions amongst counsel were needed to determine the confines of which employees' claims might be subject to mediation. ICG had in place arbitration provisions with some, but not all, loan officers and it was determined that those with signed arbitration agreements would not be included in the mediation, save for those individuals who were represented by the undersigned counsel.

Coincident to discussions regarding the scope of the mediation, the parties agreed that before any serious negotiation could take place there needed to be a robust information exchange. ICG had in place time tracking software as well as payroll systems that it used in everyday business for purposes of employee compensation. Plaintiffs' counsel was able to review data provided by the Defendant and determine what information fields were needed to construct a damages model and the Defendant provided the requested data.

The parties met at for an in-person mediation at Ms. Raisfeld's office on April 19th. Mediation was complicated by the fact that 2021 had been an extremely challenging year for ICG's business and that the market forces creating such difficulties were expected to either get worse or remain in place

in the near and medium term. ICG's finances were extensively explored at the mediation and in the weeks immediately following. In particular, ICG produced audited financial statements showing that it had suffered significant operating losses in 2021 and produced additional preliminary financial statements for 2022 indicating this was a continuing trend. Further, ICG asserted, and produced documentation consistent with this assertion, that it lost significant sources of business..[4] Ultimately, the parties were able to reach a settlement that provides recoveries to all roughly thirteen hundred (1,300) non-exempt ICG employees who had potential overtime damages in the three to six years (depending on state law limitations periods) preceding March 7, 2022 (the date the produced data set ended).

## SUMMARY OF THE SETTLEMENT TERMS

**I.      The Settlement Fund**

Defendant has agreed to pay a maximum $1,050,000.00 to settle the claims in this Action, which shall be used to provide for:

(i)      Settlement Payments to eligible current and former salespeople who wish to join the settlement up to $615,500.00.

(ii)     Settlement Administration costs of $50,000.00.  Such costs include, but are not limited to, costs associated with the creation of a Qualified Settlement Fund ("QSF"), tax reporting, postage, copying costs, website creation and maintenance, customer assistance to eligible to participate in the settlement.[5] To the extent administration costs are less than $50,000.00 such money will be distributed *pro rata* to accepting current and former salespeople above and beyond the $615,500.00 set out above.  ICG is responsible for any administration costs exceeding $50,000.00.

---

[4] Should the Court so desire, the Parties are willing to share the specific details and figures regarding ICG's financial condition, but would request that such disclosures be made to the Court *in camera* as they are comprised of manifestly sensitive business information.

[5] The Parties have received estimates that place administration costs just above or below the $50,000 figure.

(iii)      Service Awards to the two Named Plaintiffs and to the Named Plaintiff in the Lucas Litigation in the amount of $10,000.00 each ($30,000 total).

(iv)      A Total of $8,000.00 ($7,000 to Campbell and $1,000 to Paden) to the Named Plaintiffs for claimed contractual damages.

(v)      Plaintiffs' Attorneys' Fees and Costs of $346,500.00.

(vi)      The Settlement Fund does not include the employer's share of applicable employment taxes on any wage portion of settlement (which Defendant will pay separately).

Shares of the settlement have been allocated on a *pro rata* basis, save for a minimum $30 payment to all those with allocations less than $30. Accepting individuals will receive settlements for unpaid wages ranging from to just over $14,000.00 on the high end to $30 on the low end. Those employees with more overtime worked and who made more in commissions and bonuses will be eligible for higher settlement figures. Employees eligible for smaller settlement figures tend to be those with short tenures or who rarely worked overtime or who did not make a great deal of money in commissions or bonuses.

ICG is currently unable fully fund the settlement in one payment. Instead, it has agreed to fund the settlement in an amount no less than $100,000 per month beginning August 1, totaling at least $600,000.00 by December 1, 2022, and then continuing at $100,000.00 on a monthly basis until the settlement is fully funded. All payments will be escrowed until the settlement administrator establishes the QSF at which time, the escrowed amounts will be paid into the QSF and any remaining payments will be paid directly to the QSF.

## II.    Eligible Employees

The parties have agreed and confirmed that there are 1302 former and current non-exempt employees who received incentive compensation eligible to participate in the settlement. Appended to the Settlement Agreement is a listing that provides for specific unique settlement allocations for

each eligible individual based upon their work tenure within the relevant time period and their commissions and bonuses.

**III.     Settlement Notice and Check Distribution Process**

Within 30 days after the settlement is approved, the selected Claims Administrator counsel will mail, email, and/or text the Settlement Agreement along with each individual's personalized release for execution.  A settlement notice will be provided contemporaneously.  Eligible individuals will then have 60 days to accept their individual allocation and release their claims by signing their release.  If the settlement is fully funded within 15 days after the 60-day notice period has ended, the Settlement Administrator will disburse the Settlement Fund consistent with the Settlement Agreement and the signed releases.  In the event the settlement is not fully funded at the end of the 60-day notice period, Plaintiffs' counsel may elect to delay disbursement until the settlement is fully funded to prevent an unnecessary escalation in administration costs occasioned by piecemeal distributions.

**IV.     Release**

Only individuals who affirmatively elect to participate in the settlement will release any claims. The release is properly tailored to only release wage & hour claims, covering only minimum wage, overtime, and improper notice claims under federal or state wage and hour law.  Any individual who chooses not to sign their release will not be a party to the settlement.

**V.     Service Awards**

Under the Settlement Agreement, Named Plaintiffs and Ms. Lucas seek Court approval for Service Awards of $10,000 for each Named Plaintiff, in recognition of services they rendered to the Putative FLSA Settlement Collective in obtaining the benefits of the settlement as well as the risks they took in doing so.  The Named Plaintiffs assisted Counsel in the investigation of the Putative Plaintiffs' claims, participated in settlement discussions, responded to points raised by Defendant, and provided vital assistance that helped Plaintiffs' Counsel achieve this settlement for the benefit of the

greater group.

## VI. Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive 33% of the Gross Settlement Amount as attorneys' fees, totaling $346,500.00, inclusive of reimbursement of out-of-pocket costs.

## ARGUMENT

### I. The Settlement Meets the Requirement for Approval of an FLSA Settlement.

Collective actions under the FLSA Section 216(b) are fundamentally different than class actions raised under Fed. R. Civ. P. 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns present in class action litigation are not present in collective actions brought under the FLSA because there are no absent class members who will be bound to a release of their claims. *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 L 2344949, at *1 (N.D. Ill. May 15, 2015). Instead, only eligible settlement participants who *affirmatively elect* to participate in the settlement release claims against the defendant. Nor is a second-step fairness hearing required for FLSA Settlements. Bloomberg BNA, The Fair Labor Standards Act, Ch. 18.VI.A.1, p. 35. (4th ed. 2020) ("A collective action settlement may be brought to the court on a single motion to approve the settlement and enter a stipulated judgment."); *Moore v. Ackerman Inv. Co.*, No. C 07-3058, 2009 WL 2848858, at *2 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b).").

Here, the Parties' settlement should be approved because it is "a fair and reasonable resolution of a bona fide dispute." *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F. 2d 1350, 1354-55 (11th Cir. 1982). When the parties' settlement "reflect[s] a reasonable compromise over issues, such as FLSA

coverage or computation of back wages[] that are actually in dispute" approval of the settlement will "promote the policy of encouraging settlement of litigation." *Id.* at 1354. There is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007).

### A.  The Settlement is Fair and Reasonable.

The factors to consider when assessing whether an agreement is fair and reasonable are (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *See Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP, 2014 WL 12740375, at *7 (N.D. Ga. May 19, 2014) *citing Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F. 3d 1527, 1531 n.6 (11th Cir. 1994). All these factors point toward approval.

### 1.  There is No Fraud or Collusion.

The Parties negotiated the Settlement at arm's-length with, the assistance of a seasoned mediator and with notable candor by the Defendant regarding its financial condition. Each eligible individual will decide whether to participate in the settlement, with the full benefit of the settlement Notice and Settlement Agreement. There was no collusion.

### 2.  Settlement Averts Years of Complex and Expensive Litigation.

This lawsuit involves allegations of unpaid overtime and regular time under the FLSA and/or state law. There are myriad issues that would have required significant litigation had the matter not settled. Such issues include, but are not limited to, simple liability, conditional certification, the availability of liquidated damages and/or a finding of willfulness, and the applicability of ICG's arbitration agreements. Finally, certain eligible individuals earned total compensation well into the six-figures. The claims of such persons may be affected by any opinion resulting from the United States

8

Supreme Court's certiorari grant in *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289 (5th Cir. 2021). None of this to mention the time and energy that would have gone into dispositive briefing and trial. Moreover, the major overlay to all of this is that Defendant shared financial documentation with Plaintiffs' counsel that called into question the collectability of any sizable judgment against ICG won at trial following expensive litigation.

### 3. Settlement Only Occurred After a Thorough and Complete Review of the Data.

Early on Defendant produced relevant data for all members of the putative collective. Plaintiffs' Counsel used this data to construct a damages model which allowed the Plaintiffs to communicate their estimate of Defendant's maximum exposure prior to the mediation. During and following the mediation, the Defendant shared relevant information concerning its finances. *Id.* As a result, the Parties had all information that they needed to evaluate the strength of their claims and the wisdom of early resolution. This factor supports granting approval of the Settlement.

### 4. Plaintiffs Faced Obstacles Prosecuting the Action.

The "likelihood and extent of any recovery from the defendants absent ... settlement is another important factor in assessing the reasonableness of a settlement." *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP, 2014 WL 12740375, at *8 (N.D. Ga. May 19, 2014). As stated above, recovery in this matter was not guaranteed. Putting aside the fact that the Defendant intended to contest liability and certification, Plaintiffs still faced major concerns regarding Defendant's ability to litigate the case and then pay a judgment. Given the above, it would be "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

### 5. Plaintiffs and the Settlement Collective Members' Benefits are Reasonable Compared to the Range of Possible Recovery.

The Settlement has the effect of (1) providing monetary relief to Settlement Collective Members who choose to opt in the Action, (2) in exchange for an appropriate narrow and limited release of minimum wage, overtime wage, and improper notice claims, (3) eliminating the inherent risks both sides would bear if this collective action litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d 1350 at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

The Settlement compensates individuals who choose to participate in the Settlement and eliminates the possibility of a loss on a motion for collective/class certification, loss on summary judgment, loss at trial, or loss on appeal, and perhaps most importantly, a hollow judgment. Consequently, this Settlement brings value and certainty now, as opposed to years from now, or not at all. The substantial benefit that Settlement Collective Members will receive is a significant factor weighing in favor of approval of the proposed Settlement. Plaintiffs who choose to participate in the settlement will receive an amount equal to about 60% of what Plaintiffs' counsel believes to be their back wages. Given the unique risks presented in this matter, Plaintiffs submit this a very successful result. As explained above, the settlement values vary from person to person depending on how much they worked and how much they made in bonuses and commissions. Regardless, participating individuals will receive an average settlement of over $470 per person, with many receiving much, much more. In fact, over a hundred individuals will receive over $1,000 should they elect to participate.

### 6. The Opinion and the Named Plaintiffs Favor Approval.

On settlement approval, "great weight" is given to the recommendations of counsel for the parties, particularly where counsel has "considerable experience." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989). Plaintiffs' counsel are well-respected lawyers with a breadth of experience in the field of wage and hour law. They have litigated a number

of small and large overtime cases against public entities and private corporations, including, but not limited to:

> *Rogers et al. v. City of Richmond*, 3:11CV620 (EDVA)
> *Carroll et al. v. County of Henrico*, 3:12CV00105 (EDVA)
> *Devine, et al. v. City of Hampton*, 4:14CV81 (EDVA)
> *Wright, et al. v. City of Roanoke*, 7:18CV210 (WDVA)
> *Lacroix et al., v. City of Portsmouth, Virginia*, 2:13CV533
> *Slavin et al, v. United States Postal Service*, 3:17CV00134 (EDVA)
> *Milton, et al. v. Quality Eco Technologies, LLC*, 3:20CV43 (EDVA)
> *Yerby, et al. v. City of Richmond*, 3:19CV393 (EDVA)
> *Clinton, et al. v. GEICO*, 2:16CV430 (EDVA)
> *Mendoza, et al. v. Baird Drywall & Acoustic, Inc. et al.*, 7:19CV00365
> *Broussard v. Eldor Automotive Powertrain USA* 7:19CV0841 (WDVA)
> *Pinon v. Kalyan Plaza, LLC et al.* 7:20CV05 (WDVA)
> *Sziber v. Dominion Energy, Inc.* 3:20CV117 (EDVA)
> *Alley v. Quality Eco Technologies, LLC* 3:20-CV355 (EDVA)
> *Denson v. Elephant Insurance Services, LLC*, 3:22CV22 (EDVA)

Plaintiffs' Counsel relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. Based on Plaintiffs' Counsel's knowledge of the case and applicable law, the defendant's finances, as well as their experience in numerous similar wage and hour class actions involving sales employees, Plaintiffs' Counsel's opinion is that the Settlement is fair, reasonable and adequate. The Settlement Resolves a Bona Fide Dispute.

Plaintiffs alleged that they worked in excess of forty hours in one or more workweeks for which Defendant did not properly pay them full overtime wages in violation of the FLSA and state law. Plaintiffs asserted these claims via their Complaints. Defendant denies these allegations.

The Parties dispute that Plaintiffs would have been able to successfully certify a collective and class. Defendants believe that Plaintiffs faced obstacles regarding the similarity of the putative plaintiffs. Further, the Parties disagree regarding the gravamen of the claim that the putative plaintiffs all received improperly calculated overtime payments. Finally, Plaintiffs believe that if their allegations were ultimately shown to have been correct, Defendant would have been faced with the prospect of a significant monetary verdict in favor of Plaintiffs, as well as the obligation to pay litigation fees and

costs. But, due to Defendant's financial condition such a verdict may not have been recoverable. Additionally, if Defendant's arguments were correct, Plaintiffs faced the risk of a complete defense verdict and, once again, no recovery of any kind. Accordingly, the Court should conclude that a *bona fide* dispute between the parties existed.

**II.    The Proposed Settlement Agreement, Release and Notice are Appropriate.**

For proposed collective settlements under the FLSA, it is necessary to provide potential members of the collective "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see generally* 29 U.S.C. § 216(b)

The settlement Notice and Settlement Agreement clearly describe the terms of settlement, the relief available to Settlement Collective Members, and the procedures for and consequences of participating in the settlement. They also describe the fees and costs that Plaintiffs' Counsel is seeking. They further provide contact information for the Settlement Administrator and Plaintiffs' Counsel.

**III.   Plaintiffs' Request for Attorney's Fees and Costs Should Be Approved.**

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The Settlements agreed to by the Parties reflect this and rather than engaging in a time consuming and costly fee fight over the amount of attorneys' fees, the parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). When assessing the fairness of attorneys' fees pursuant to a court-ordered

fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988

(4th Cir. 1992). However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA

settlement is not identical to the traditional lodestar analysis. *See Devine v. City of Hampton*, 2015 WL

10793424 at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an

FLSA settlement, courts should give some deference to the parties' voluntary agreement and use

lodestar principals as a cross-check to assess fairness. [6] *Id.*

Here, the parties negotiated at mediation and during subsequent settlement conferences that

Class Counsel's attorneys' fees and costs would be set at $346,500.00 33% of the Settlement Fund.

This figure is well in line with awarded attorneys' fees in other collective/class action cases alleging

the non-payment of overtime under the FLSA. *See, e.g., Rogers et al. v. City of Richmond*, 3:11CV620

(EDVA) (awarding 33.334% in fees and costs of $7,000,000.00 FLSA/State law wage & hour matter);

*Winingear*, 2014 WL 3500996, at *1 (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000

---

[6] Plaintiffs' counsel have voluntarily reduced their fees to 33% and have agreed to absorb all of their own costs. Plaintiffs' counsel's current lodestar is more than $184,000 (approximately $8,087 in advanced costs to date) and thus the requested fee represents a modest multiplier of 1.8. Plaintiffs' counsel expects to incur significant additional fees through the notice and administration period as they respond to the needs of the settlement administrator and settlement collective members. Plaintiffs' current fee records or summary of same can be made available to the Court for *in camera* review should the Court wish to review them. Plaintiffs can likewise submit declarations supporting their rates and experience if the Court requires.

Courts in the Fourth Circuit and throughout the country have routinely held that lodestar multipliers in this range (and significantly higher) are reasonable. *See Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (approving fees at "3.69 times the lodestar. This multiplier is within the range of reasonableness, as courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee… Courts both within this Circuit and across the country routinely approve fee awards with higher lodestar multipliers.") (internal quotes omitted)(collecting cases); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."; approving lodestar multiplier between 3.4 and 4.3); *Deloach v. Philip Morris Co.,* No. 00-1235, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) (approving 4.45 lodestar multiplier); *Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020) (approving lodestar multiplier of 2.45); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016)(approving lodestar multiplier of 1.97 as "eminently reasonable."; "District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers.") (collecting cases) (J. Gibney); *Domonoske v. Bank of Am.,* N.A., 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (approving "lodestar multiplier of about 1.8, which is well within the normal range of lodestar multipliers.")(collecting cases); *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (approving multiplier of 1.99); *Witt v. CoreLogic Saferent, LLC*, No. 3:15-CV-386, 2018 WL 1560069, at *4 (E.D. Va. Mar. 22, 2018)(approving multiplier of 2.24, noting "a multiplier of 2.24 is similar to those applied in similar cases.")(collecting cases)(M.J. Novak).

FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Hall v. Dominion*, No. 3:18-cv-00321 (EDVA) Doc. 92 (approving 35% of the gross settlement amount); *Sziber*, 3:20-cv-117 (EDVA) Doc. 123 (approving 35% of the gross settlement amount); *Devine*, 2015 WL 10793424, at *3 (finding 33.98% ($1,189,167.00) in fees and costs on a $3,500,000 FLSA settlement to be reasonable); *see also Gagliastre*, 2019 WL 2288441, at *5 ("Fees awarded under "the percentage-of-recovery" method in settlements under $100 million have ranged from 15% to 40%); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018)(finding 33.39% percent award is within the range of percentages that have been approved in other cases in the Fourth Circuit); *Hooker v. Sirius XM Radio, Inc.*, No. 4:13-CV-003, 2017 WL 4484258, at *2 (E.D. Va. May 11, 2017)(TCPA claim; awarding 35% fees).

Class Counsel's attorneys' fees are part of the bargained-for settlement. The Parties agreed to set Class Counsel's fees at 33%. This is the same agreement that the Parties have presented to the Court for approval. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV.

A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement).

"[A]ny process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action). Additionally, counsel's fee is reasonable in light of the fact that Plaintiffs' fee agreements grant Plaintiffs' Counsel a 40% interest in the gross amount recovered. The requested thus fee approximates "the market price for legal services." *See Sutton v. Bernard,* 504 F.3d 688, 692, 693-94 (7th Cir. 2007).

**IV. Plaintiffs Were Critical to the Resolution of the Claims and are Entitled to Service Awards.**

"Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1374 (N.D. Ga. 2019). Among the factors considered in approving a service award are "(1) the actions the class representatives took to protect the interests of the class, (2) the degree to which the class benefited from those actions, and (3) the amount of time and effort the class representatives expended in pursuing the litigation." *Id.*

Here, the three Named Plaintiffs requests a service award of $10,000 each, totaling $30,000. This award is justified by the actions Named Plaintiffs undertook in the role of representative plaintiffs. Plaintiffs provided factual information to Plaintiffs' Counsel and continually consulted with Plaintiffs' Counsel regarding litigation initiation, strategy, and settlement. In light of Plaintiffs' efforts, the Gross Settlement Amount of $1,050,000 was achieved.

The requested service amount is spread amongst three individuals and is equivalent to approximately 2.9% of the Gross Settlement Amount. This is a reasonable percentage, below the percentage routinely approved in wage and hour litigation. *See, e.g., . Soto,* 2018 WL 1875296, at *3

(approving a total of $15,500 in service awards, representing approximately 3.4% of the total $450,000 settlement amount); *Zolkos,* 2015 WL 4275540, at *3 (awarding a total of $144,000 in service awards, representing approximately 4.3% of the guaranteed settlement amount of $3,350,000).

**CONCLUSION**

Wherefore the parties request that the Court approve the settlement and enter the Proposed Consent Order provided as an attachment to the Joint Motion to Approve Settlement.


Respectfully submitted,


| | |
|---|---|
| /s/Timothy Coffield | /s/Katharine Thomas Batista |
| Timothy Coffield (VSB 83430) | Katharine Thomas Batista, Esquire |
| Coffield PLC | Offit Kurman, P.A. (PA-NA) |
| 106F Melbourne Park Circle | 1801 Market Street |
| Charlottesville, VA 22901 | Suite 2300 |
| Phone 434-218-3133 | Philadelphia, PA 19103 |
| Fax 434-321-1636 | Fax: (267) 338-1335 |
| tc@coffieldlaw.com | Email: kbatista@offitkurman.com |
| | |
| Craig Juraj Curwood (VSB No. 43975) | Anders Sleight, Esquire |
| Zev H. Antell (VSB No. 74634) | Alfredo Acin (VSB # 76445) |
| Butler Curwood, PLC | Offit Kurman, P.C. |
| 140 Virginia Street, Suite 302 | 8000 Towers Crescent Drive, Suite 1400 |
| Richmond, Virginia 23219 | Tysons Comer, VA 22182 |
| Tel: (804) 648-4848 | Fax: 703-745-1835 |
| Fax: (804) 237-0413 | anders.sleight@offitkurman.com |
| craig@butlercurwood.com | aacin@offitkurman.com |
| zev@butlercurwood.com | |
| | *Counsel for Defendant* |
| | |
| *Counsel for Plaintiffs* | |

# CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record:

/s/Timothy Coffield
*Counsel for Plaintiffs*